# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>[2] ANGEL RAMOS-CRUZ,<br>a.k.a. "Api,"<br>Defendant. | CRIMINAL NO. 15-075(GAG) |

## PLEA AGREEMENT
(Pursuant to Fed. R. Crim. P. 11(c)(1)(C))

The United States of America, by and through the undersigned attorneys, along with defendant [2] Angel Ramos-Cruz, and his counsel, Anita Hill, Esq., pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and state to this Honorable Court that they have reached a Plea Agreement, the terms and conditions of which are as follows:

### 1. COUNTS TO WHICH DEFENDANT PLEADS GUILTY

Defendant agrees to enter a guilty plea to Counts One through Six of the Indictment in 15-075 (GAG). The defendant acknowledges that he has reviewed the Indictment with his attorney and the contents of that indictment were translated to him in the Spanish language. The indictment is hereby incorporated by reference into this Plea Agreement.

### 2. MAXIMUM PENALTIES

Defendant understands that in relation to Counts One through Six of the Indictment in Crim. No. 15-075(GAG), he shall be punished according to Title 18, *United States Code*, §§ 1111, 1117, and 924(j) by imprisonment for any term of years or for life. Pursuant to Title 18, *United States Code*, § 3571(b)(3) the defendant faces a maximum fine of two hundred fifty

thousand ($250,000.00). The defendant may also be subject to a term of supervised release of up to five (5) years. *See* Title 18, *United States Code*, § 3583(b)(1).

### 3. FINES AND RESTITUTION

The defendant is aware that the Court may order the defendant to pay a fine and also that the Court may impose restitution. As part of this Agreement, the defendant agrees to execute a financial statement to the United States (OBD Form 500). The United States will make no recommendations as to the imposition of fines or restitution.

### 4. RULE 11(c)(1)(C) WARNINGS

Defendant is aware that acceptance of this plea agreement is within the discretion of the district court. Defendant is aware that the Court may accept or reject the Plea and Forfeiture Agreement, or may defer its decision whether to accept or reject the Plea and Forfeiture Agreement until it has considered the pre-sentence investigation report. *See* Fed. R. Crim. P. 11(c)(3)(A). If the court accepts the plea agreement, it will inform the defendant that the plea agreement is of the type specified by Rule 11(c)(1)(C) and the agreed disposition in the judgment. *See* Fed. R. Crim. P. 11(c)(4). If the court rejects the plea agreement, the court will inform the parties that the court has rejected the plea agreement and advise the defendant that the court is not required to follow the plea agreement and give him an opportunity to withdraw the plea. Finally, the court will advise the defendant that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated. *See* Fed. R. Crim. P. 11(c)(5)(A)-(C).

### 5. UNITED STATES RESERVATION OF RIGHTS

The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right: (a) to bring its version of the facts of this case including its file and any investigative files to the attention of the probation office in connection with that office's preparation of a presentence report; (b) to dispute sentencing factors or facts material to sentencing; (c) to seek resolution of such factors or facts in conference with opposing counsel and the probation office.

### 6. NO STIPULATION AS TO CRIMINAL HISTORY CATEGORY

The parties do **not** stipulate as to any Criminal History Category for defendant.

### 7. SENTENCING GUIDELINE CALCULATIONS

Defendant is aware that pursuant to the decision issued by the Supreme Court of the United States in *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are no longer mandatory and must be considered effectively advisory. Therefore, after due consideration of the relevant factors enumerated in Title 18, *United States Code*, § 3553(a), the United States and defendant submit the following advisory Guideline calculations related to Criminal Case No. 15-075 (GAG).

| SENTENCING GUIDELINE CALCULATION: COUNTS ONE THROUGH SIX 15-075 (GAG) 18 U.S.C. §§ 1111, 1114, & 1117, 18 U.S.C. § 924(j) [Murder of an Employee of the United States, Conspiracy, Murder for Hire, Use of a Firearm Resulting in Death] | |
| --- | --- |
| Base Offense Level: U.S.S.G. § 2A1.1 | 43 |
| Acceptance of Responsibility: U.S.S.G.§ 3E1.1 | -3 |
| TOTAL ADJUSTED OFFENSE LEVEL | 40 |

| | |
|---|---|
| RANGE IF CRIMINAL HISTORY CATEGORY I | 292-365 |
| RANGE IF CRIMINAL HISTORY CATEGORY II | 324-405 |
| RANGE IF CRIMINAL HISTORY CATEGORY III | 360-Life |
| RANGE IF CRIMINAL HISTORY CATEGORY IV | 360-Life |
| RANGE IF CRIMINAL HISTORY CATEGORY V | 360-Life |
| RANGE IF CRIMINAL HISTORY CATEGORY VI | 360-Life |

8. **SENTENCE RECOMMENDATION**

After due consideration of the relevant factors enumerated in Title 18 *United States Code* § 3553(a) and in exchange for the defendant's agreement to enter a guilty plea, the parties agree to recommend to the Court that the defendant be sentenced to a term of imprisonment of three hundred and sixty (360) months of incarceration. The parties are bound to this recommendation irrespective of the defendant's criminal history category.

The defendant reserves the right to request that this sentence run concurrent to his federal sentence in 12-200 (ADC). The government reserves the right request that the sentence in 15-075 (GAG) run consecutive to his sentence in 12-200 (ADC), but has not objection to the defendant receiving credit towards his sentence in this case from the Bureau of Prisons for the time he has served since January 28, 2015.

The parties agree that this sentence is reasonable pursuant to Title 18, *United States Code*, § 3553(a). The parties further agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation constitutes a material breach of the Plea Agreement.

## 9. WAIVER OF APPEAL

Defendant knowingly and voluntarily agrees that if the sentence of imprisonment imposed by the Court is three hundred and sixty (360) months or less, concurrent or consecutive to his other federal sentence, the defendant waives the right to appeal this case's judgement and sentence, including but not limited to the term of imprisonment, restitution, fines, forfeiture, and any other terms and conditions of supervised release.

## 10. NO FURTHER ADJUSTMENTS OR DEPARTURES

The United States and defendant agree that no further adjustments or departures to defendant's total adjusted base offense level and no variance sentence under Title 18, *United States Code*, § 3553 shall be sought by defendant. The parties agree that any request by defendant for an adjustment or departure will be considered a material breach of this Plea Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

## 11. SATISFACTION WITH COUNSEL

Defendant represents to the Court that he is satisfied with counsel, Anita Hill, and states that counsel has rendered effective legal assistance.

## 12. RIGHTS SURRENDERED BY DEFENDANT THROUGH GUILTY PLEA

Defendant understands that by entering into this Plea and Forfeiture Agreement he surrenders certain rights as provided in this agreement. Defendant understands that the rights of criminal defendants include the following:

A. If defendant had persisted in a plea of not guilty to the charges, defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if defendant, the United States and the judge agree.

B. If a jury trial is conducted, the jury would be composed of twelve lay persons

selected at random. Defendant and defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, that it could not convict defendant unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

C. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established defendant's guilt beyond a reasonable doubt.

D. At a trial, the United States would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those witnesses and defendant's attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on defendant's own behalf. If the witnesses for defendant would not appear voluntarily, defendant could require their attendance through the subpoena power of the Court.

E. At a trial, defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from defendant's refusal to testify. If defendant desired to do so, defendant could testify on his behalf.

### 13. STIPULATION OF FACTS

The accompanying Stipulation of Facts signed by defendant is hereby incorporated into this Plea Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect and that the United States would have proven those facts beyond a reasonable doubt at trial.

### 14. LIMITATIONS OF PLEA AGREEMENT

This Plea and Forfeiture Agreement binds only the United States Attorney's Office for the District of Puerto Rico and defendant. It does not bind any other federal district, state, or local authorities.

15. **ENTIRETY OF PLEA AGREEMENT**

This written agreement constitutes the complete Plea and Forfeiture Agreement between the United States, defendant, and defense counsel. The United States has made no promises or representations except as set forth in writing in this Plea and Forfeiture Agreement and deny the existence of any other term and conditions not stated herein.

16. **AMENDMENTS TO PLEA AGREEMENT**

No other promises, terms, or conditions will be entered unless in writing and signed by all parties.

17. **VOLUNTARINESS OF GUILTY PLEA**

Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily and only because he is guilty.

ROSA EMILIA RODRÍGUEZ-VÉLEZ
United States Attorney

A.D.C.R.

_____
**Timothy Henwood**
First Assistant United States Attorney
Dated: Dec. 5, 2018

_____
**Angel Ramos-Cruz**
Defendant
Dated: Dec. 7, 2018

_____
**Nicholas W. Cannon**
Assistant United States Attorney
Dated: Dec. 5, 2018

_____
**Anita Hill**
Counsel for the Defendant
Dated: Dec. 7, 2018

_____
**Max Perez-Bouret**
Assistant United States Attorney
Dated: Dec 5, 2018

**ACKNOWLEDGMENT OF RIGHTS AND TERMS OF PLEA AGREEMENT**

I have consulted with my counsel and fully understand all of my rights with respect to the Indictment pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines, Policy Statements, Application, and Background Notes which may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with your attorney. My counsel has translated the plea agreement to me in the Spanish language and I have no doubts to the contents of the agreement. I fully understand this agreement and I voluntarily agree to it.

Date: Dec. 7, 2018

Angel Ramos-Cruz
Defendant

I am the attorney for the defendant. I have fully explained to the defendant his rights with respect to the pending Indictment. Further, I have reviewed the provisions of the Sentencing Guidelines, Policy Statements, Application, and Background Notes, and I have fully explained to the defendant the provisions of those guidelines which may apply in this case. I have carefully reviewed every part this Plea Agreement with the defendant. I have translated the plea agreement and explained it in the Spanish language to the defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, the defendant is entering into this agreement voluntarily, intelligently, and with full knowledge of all consequences of defendant's plea of guilty.

Date: Dec. 7, 2018

Anita Hill, Esq.
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea and Forfeiture Agreement in this case, the United States of America and defendant Angel Ramos-Cruz agree that the following recital provides a true and accurate summary of the facts leading to defendant's acceptance of criminal responsibility for violations of Title 18, *United States Code,* §§ 1111, 1114, 1117.

Had criminal case 15-075 (GAG) proceeded to trial against defendant Angel D. Ramos-Cruz, the government's evidence would have proven beyond a reasonable doubt, the following:

In early 2013, [2] Angel D. Ramos-Cruz was an inmate at the Metropolitan Detention Center ("MDC") and was housed in Unit 2-B. Ramos-Cruz was identified as one of the leaders in Unit 2-B and was subject to frequent searches conducted by Correctional Officers from the Bureau of Prisons ("BOP"), specifically by Lieutenant Osvaldo Albarati ("Lt. Albarati"). Lt. Albarati seized contraband from Ramos-Cruz that subjected him to disciplinary actions to include solitary confinement and the elimination of visits and telephone calls. Some of the contraband seized by Lt. Albarati included contraband cellphones that were expensive for inmates to smuggle into MDC, Guaynabo. As a result of the continuous seizures made by Lt. Albarati, Ramos-Cruz and other co-defendants devised a plan to have Lt. Albarati murdered. The murder was to take place after Lt. Albarati finished his shift at MDC and he was on his way home in his car. A vehicle with enforcers would be waiting nearby in highway #22 for Lt. Albarati to pass them in his car to do a drive-by-shooting murder. Ramos-Cruz would provide the enforcers the information pertaining to the vehicle description and the time Lt. Albarati would leave MDC.

From inside MDC, Ramos-Cruz contacted an associate, [4] Juan Quinones-Melendez a.k.a. El Manco, and requested that El Manco recruit the triggermen to carry out the hit or "vuelta".

"Vuelta" which translates in English to "turn" or "errand" was a term that the organizations of [5] Orlando Mojica-Rodriguez and [4] Quinones-Melendez would use to describe a plan to commit a murder. [4] Quiñonez-Melendez contacted his fellow associate [5] Orlando Mojica-Rodriguez a.k.a. "Yogui," to shore up resources and triggermen. [4] Quiñones-Melendez recruited [7] Carlos Rosado-Rosado a.k.a. "Cano" and [6] Jayson Rodriguez-Gonzalez, a.k.a. "Gonzo," to participate in the murder of Lt. Albarati. Meanwhile, [5] Mojica-Rodriguez recruited [8] Alexander Rosario de Leon, a.k.a. "Coqui," as an additional enforcer to participate in the murder.

On February 26, 2013, [4] Quiñones-Melendez, [5] Orlando Mojica-Rodriguez, [6] Jayson Rodriguez-Gonzalez, and [7] Carlos Rosado-Rosado met at the home of [5] Mojica-Rodriguez. There, [5] Mojica-Rodriguez and [4] Juan Quinones-Melendez a.k.a. El Manco, discussed the "vuelta" to be committed that day. [5] Mojica-Rodriguez and [4] Quinones-Melendez then instructed [8] Rosario de Leon and [6] Rodriguez-Gonzalez to go with [7] Rosado-Rosado towards MDC Guaynabo to commit the murder. [4] Quinones-Melendez provided a cellphone to [7] Rosado-Rosado and told him that [2] Ramos-Cruz would contact him with more details pertaining to the target and further instructions.

*A.D.R.C* Four .40 caliber Glock pistols were placed by [6] Jayson Rodriguez-Gonzalez, a.k.a. "Gonzo" and [8] Alexander Rosario de Leon, a.k.a. "Coqui," in a hidden compartment in the center console area of [7] Carlos Rosado-Rosado's vehicle – a charcoal gray Yaris. The three of them then drove towards MDC at the direction of [4] Quinones-Melendez. On the way from Juncos to MDC, Guaynabo, [7] Rosado-Rosado received telephone calls from [2] Angel Ramos-Cruz, a.k.a. "Api," inquiring as to their location. Eventually, Rosado-Rosado got near the toll both on highway 22 just beyond the MDC facility. [2] Angel Ramos-Cruz, "Api," had instructed them to park near

the prison.

[2] Ramos-Cruz then called them again and stated that Lt. Albarati – the target of the hit – was in a white Veloster. [2] Ramos-Cruz called shortly thereafter and explained that the target was getting into his vehicle and they needed to get the weapons ready. [2] Ramos-Cruz told [7] Rosado-Rosado that the Veloster was getting ready to get on highway 22. [8] Rosario de Leon observed the white Veloster pass them as they were parked on the shoulder and [7] Rosado-Rosado merged onto highway 22 and followed the Veloster. Before they approached the Rio Honda Shopping Center, [7] Rosado-Rosado pulled his Yaris very close to the white Veloster and [6] Rodriguez-Gonzalez and [8] Rosario de Leon rolled down their windows, pulled out the firearms, and fired into the vehicle driven by Lt. Albarati. Both [6] Rodriguez-Gonzalez and [8] Rosario de Leon had two weapons each and fired until they were empty. At some point, [8] Rosario de Leon's firearm jammed, but he was able to clear the firearm and continue shooting. [7] Rosado-Rosado exited on the Rio Honda exit and eventually got back onto highway 22 heading in the opposite direction towards Caguas. Afterwards, [7] Rosado-Rosado, using the cellphone provided by [4] Quiñonez-Melendez, contacted [2] Ramos-Cruz to inform him that the murder was done.

_____
**Nicholas Cannon**
Assistant United States Attorney
Dated: Dec. 5, 2018

_____
**Max Perez**
Assistant United States Attorney
Dated: Dec 5, 2018

_____
**Anita Hill**
Counsel for Defendant
Dated: Dec. 7, 2018

_____
**Angel Ramos-Cruz**
Defendant
Dated: Dec. 7, 2018